# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 25-729 consolidated with 25-730

TELECA DONACHRICHA

VERSUS

NIGHTINGALE NURSES, LLC, AND
LOUISIANA INSURANCE GUARANTY
ASSOCIATION, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 23-04740 C/W 22-00929
MELISSA A. ST. MARY, WORKERS COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GARY J. ORTEGO**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Clayton Davis,
Judges.

**AFFIRMED.**

**John C. Turnage**
**Mayer, Smith & Roberts, LLP**
**8570 Business Park Dr., Suite 200**
**Shreveport, LA 71105**
**(318) 221-2135**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **CHRISTUS Health Southwest Louisiana**

**Michelle M. Sorrells**
**Walters, Thomas, Cullens**
**12345 Perkins Rd., Building 2**
**Baton Rouge, LA 70810**
**(225) 236-3646**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Teleca Donachricha**

**Eric J. Waltner**
**Allen & Gooch**
**2000 Kaliste Saloom Rd. Suite 400**
**Lafayette, LA 70508**
**(337) 291-1400**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Louisiana Insurance GuarantyAssociation**
    **Nightingale Nurses, LLC**

**ORTEGO, Judge.**

This case arises from a worker's compensation claim. However, the appeal involves only a dispute between party defendants regarding reimbursements of benefits payments made by the Louisiana Insurance Guaranty Association ("LIGA") to a claimant after the insolvency of the employer's worker's compensation insurance carrier.

## FACTS/PROCEDURAL HISTORY

Plaintiff, Teleca Donachricha ("claimant"), filed a claim for worker's compensation benefits after an accident on September 30, 2011. Claimant claims she sustained an injury to her right knee and reinjured the knee a few nights later. Claimant was a direct employee of Nightingale Nurses, LLC ("Nightingale") as a traveling nurse.

The accident occurred at CHRISTUS Health Southwest Louisiana d/b/a CHRISTUS St. Patrick Hospital ("CHRISTUS") which had contracted with Nightingale to supply certain nurses at the St. Patrick facility when requested. Michelle Aguillard, a CHRISTUS representative, testified that hospitals acquire travel nurses by either (1) directly contracting with a nursing agency or (2) contracting with an intermediary entity that contracts directly with nursing agencies. In the case of an intermediate entity's involvement, Ms. Aguillard testified the contract would be between the nursing agency and the intermediary.

Although CHRISTUS and Nightingale sometimes worked together through an intermediary such as ShareStaff (a nursing agency), evidence shows CHRISTUS paid Nightingale directly at the time of this accident. The worker's compensation judge ("WCJ") found that CHRISTUS was the "borrowing employer" of claimant at the time of the accident and that a direct contract existed between CHRISTUS and Nightingale.

Additionally, at the time of claimant's injury, CastlePoint Insurance Company ("CastlePoint") provided worker's compensation insurance coverage. Pursuant to claimant's injury and claims, CastlePoint paid claimant's benefits on behalf of Nightingale from the date of the injury until March 2017, when CastlePoint went into receivership. Thereafter, LIGA was called upon to pay these claims.[1]

LIGA paid medical and indemnity benefits from 2017 until 2022, specifically 520 weeks of supplemental earnings benefits. In 2022, LIGA terminated payment of claimant's indemnity benefits. On February 14, 2022, claimant filed a 1008 against Nightingale and LIGA seeking reinstitution of indemnity benefits. On August 4, 2022, claimant filed an amended 1008 adding LIGA as a defendant. LIGA answered the 1008 on August 23, 2022, and filed a third-party demand against CHRISTUS. On December 12, 2022, CHRISTUS was served with the third party demand, this was the first notification CHRISTUS had of CastlePoint's insolvency. The claim was officially tendered to CHRISTUS in November of 2024 via email to counsel for CHRISTUS.

LIGA's original, supplemental and amended third party demands, sought reimbursement from CHRISTUS for all of sums paid on this claim since CastlePoint's 2017 receivership.

The trial was on June 4, 2025. On June 23, 2025, the WCJ rendered judgment in favor of LIGA and against CHRISTUS. Specifically, the WCJ awarded LIGA the full amount of its claim of $247,928.35 for reimbursement against CHRISTUS and denied CHRISTUS's request for reimbursement from Nightingale/LIGA for any

---

[1] LIGA is a private nonprofit unincorporated legal entity created by statute to provide payment of covered claims under certain insurance policies with minimal delay and financial loss to claimants or policyholders due to insurer insolvency. La.R.S. 22:2052. Claims by insurers, including excess insurers or self-insured employers, seeking subrogation or reimbursement from LIGA are generally excluded as covered claims under LIGA. 1 Couch on Ins. § 6:30.

amounts it has paid or will pay on the claim, including penalties, attorney's fees, costs, and interest.

Thus, the only issues on appeal are the reimbursement claims between LIGA and CHRISTUS, and CHRISTUS's claim for reimbursement against Nightingale/ LIGA.[2]

## ASSIGNMENTS OF ERROR

1. The [WCJ] committed manifest error in ordering CHRISTUS to reimburse LIGA for the full amount paid to or on behalf of the claimant, by LIGA, including all costs of the case and attorney's fees.

2. The [WCJ] committed manifest error in not ordering Nightingale Nurses, LLC/LIGA to reimburse CHRISTUS for any amounts that CHRISTUS has or will pay on this claim, including penalties, attorney's fees, costs and interest.

## STANDARD OF REVIEW

In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. . . . Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. . . . Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Dean v. Southmark Const.*, 03-1051, p.7 (La. 7/6/04), 879 So.2d 112, 117 (citations omitted).

## LAW AND DISCUSSION

As to these reimbursement claims by these parties, there is no dispute that CHRISTUS is self-insured.

---

[2] Other issues in this case regarding a 1009 appeal concerning a spinal cord stimulator, along with the disability status of the claimant, past due indemnity due to the claimant, compensability of the left knee injury to the work accident, and any penalties, attorneys fees, or costs have been settled and are not before the court in this appeal.

LIGA argues and primarily relies on La.R.S. 22:2062(A)(1) (titled "Exhaustion of other coverage" in the LIGA statutory scheme) in asserting that it is owed reimbursement from CHRISTUS, which states, in pertinent part, as follows:

> A. (1) Any person having a claim against an insurer shall be required first to exhaust all coverage provided by any other policy, including the right to a defense under the other policy, if the claim under the other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the association. The requirement to exhaust shall apply without regard to whether or not the other insurance policy is a policy written by a member insurer. However, no person shall be required to exhaust any right under the policy of an insolvent insurer or any right under a life insurance policy or annuity.

Nightingale argues that it falls under the "other insurance" provision of La.R.S. 22:2062(A)(5)(b) and is a solidary obligor pursuant to La.R.S. 22:2062(A)(4):

> (4) A claim under a policy providing liability coverage to a person who may be solidarily liable as a tortfeasor with the person covered under the policy of the insolvent insurer that gives rise to the covered claim shall be considered to be a claim arising from the same facts, injury or loss that gave rise to the covered claim against the association.
>
> (5) For purposes of this Section, a claim under an insurance policy other than a life insurance policy or annuity shall include, but is not limited to:
>
> . . .
>
> (b) Any amount payable by or on behalf of a self-insurer.

Conversely, CHRISTUS argues that La.R.S. 22:2058(A)(5), concerning the powers and duties of LIGA, casts LIGA with the obligation to timely inform CHRISTUS of CastlePoint's insolvency. LIGA failed to do so. Thus, LIGA is not due any reimbursement, and Nightingale and LIGA should reimburse CHRISTUS for any amounts that CHRISTUS has or will pay on this claim, including penalties, attorney's fees, costs and interest.

4

La.R.S. 22:2058(A)(5) states:

A. The association shall do all of the following:

. . .

(5) Notify claimants, insureds and other interested parties of the determination of insolvency and of their rights under this Part as deemed necessary by the commissioner and upon the commissioner's request, to the extent records are available to the association. The association may discharge this duty by notice mailed to the last known address or notice by publication in a newspaper of general circulation when a mailing address is unavailable or insufficient.

Nightingale further argues CHRISTUS is statutorily prohibited from making a request for reimbursement pursuant to La.R.S. 22:2055(6)(a)(iii), which lists circumstances *not* included as "covered claims":

. . . In addition, any person insured under a policy issued by an insolvent insurer shall likewise not be liable for any subrogation claim or any contractual indemnity claim asserted by any reinsurer, insurer, insurance pool, underwriting association, health maintenance organization or plan, hospital plan corporation, professional health service corporation, preferred provider organization or plan, employee retirement fund including but not limited to plans subject to the Employee Retirement Income Security Act of 1974, Medicare or Medicare Advantage, Medicaid, self-insurer, or any other person with an interest in the claim, other than to the extent the claim exceeds the association's obligation limitations. . . .

## ASSIGNMENT OF ERROR NO. 1

*Appellant's arguments*

CHRISTUS's principle argument is that it was deprived of the opportunity to investigate the claim because LIGA's failed to inform CHRISTUS of CastlePoint's insolvency in a timely manner. It contends that with timely notuce, it would have searched for evidence of an intermediary entity such as ShareStaff, which also could have possibly been held liable for the claim. However, it contends that the passage of time has rendered such an investigation impossible. Thus, CHRISTUS argues that Nightingale should be prohibited from making a claim for reimbursement dating back to 2016-2017 when LIGA began making payments.

5

CHRISTUS further argues that the contracts between Nightingale, CHRISTUS, and ShareStaff created certain obligations, including the agreement to hold harmless and defend CHRISTUS against any worker's compensation claims. Furthermore, a representative of LIGA once agreed to continue to pay the medical benefits to claimant while speaking with claimant.

Additionally, CHRISTUS argues that LIGA acted in bad faith when it failed its statutory duty to notify CHRISTUS of the claim after the incident and 11 years thereafter. CHRISTUS contends that La.R.S. 22:1258(5) required LIGA to notify claimants, insureds, and other interested parties of CastlePoint's insolvency. CHRISTUS was an obviously interested party, and is owed reimbursement by LIGA.

Alternatively, CHRISTUS avers that the WCJ erred in finding that payments by LIGA before December, 2022 were owed, as it had not been put on notice of CastlePoint's insolvency at that time. Otherwise, this court is permitting LIGA to profit from its dereliction of duty.

*Appellee's arguments*

In support of its argument that LIGA is entitled to reimbursement, Nightingale cites *Cline v. Pac. Marine Ins. Co.*, 619 So.2d 1256, (La. App. 3 Cir.), *writ denied*, 625 So.2d 1045 (La.1993). *Cline* allowed LIGA to recover payments made, where the claimant was required to exhaust worker's compensation benefits from the employer's carrier before involving LIGA. The court applied the "nonduplication of recovery" statute, (La.R.S. 22:1386(1)),[3] the precursor to La.R.S. 22:2062 and

---

[3] The text of prior La.R.S. 22:1386(1) read as follows:

1386. Nonduplication of recovery

…

(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy.

determined that LIGA was therefore entitled to recover any amounts it had paid to the claimant that would otherwise have been the policy holder's responsibility.

Pursuant to La.R.S. 22:2062 (A)(5)(b), self-insurance is considered "other insurance." Thus, CHRISTUS, the borrowing employer, is a solidary obligor responsible for paying the claim pursuant to La.R.S. 22:2062(A)(1)(4).

The question then is whether LIGA, the payor of last resort, is entitled to full reimbursement from CHRISTUS in accordance with La.R.S. 22:2062 and *Cline*.

Nightingale argues that CHRISTUS incorrectly (1) asserts that the language of La.R.S. 22:2062 is different than it was in the *Cline* case, implying that the amended language affects the result of this case;[4] (2) argues that the WCJ's reference to it as a "high net worth insured" in the reasons for ruling results in a basis for appeal; and (3) asserts that recovery is precluded pursuant to La.R.S. 22:2058. CHRISTUS incorrectly taking the position that it qualifies as an "interested party" and disregards the fact that the obligation to notify an interested party is qualified by three phrases in the statute: "as deemed necessary by the commission"; "upon the Commissioner's request"; and "to the extent that records are available to the Association."

---

Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.

[4] When the *Cline* case was decided, the relevant statute was La.R.S. 22:1386, which had slightly different wording than the statute in its current form, La.R.S. 22:2062. The differences, discussed further below in our analysis, are as follows:

Current (La.R.S. 22:2062)

(2) Any amount payable on a covered claim under this Part shall be reduced by the full applicable limits stated in the other insurance policy, or by the amount of the recovery under the other insurance policy as provided herein.

Previous (La.R.S. 22:1386)

(1) ... Any amount payable on a covered claim under this part shall be reduced by the amount of any recovery under such insurance policy.

Thus, Nightingale contends that the record contains no evidence that the commission deemed notification to CHRISTUS necessary; no evidence of a Commissioner's request that notification be provided to CHRISTUS; and no evidence that records were available to the Association establishing the contractual relationship. Therefore, Nightingale concludes CHRISTUS has failed to prove that all three of those necessary elements are satisfied in this case; thus, no manifest error can be found.

Although Nightingale acknowledges that CHRISTUS asserts that it was prejudiced by the inability to locate evidence in the five to six years between the insolvency and CHRISTUS's notice of the insolvency, Nightingale contends that it was able to carry its burden of proof. Specifically, Nightingale shows that the testimony of Melissa Penzato, a former employee of ShareStaff, explained that the direct contract between CHRISTUS and Nightingale indicated that ShareStaff and its successors would not have been involved in that business dealing. Thus, no prejudice could have resulted.

According to Penzato, Nightingale and CHRISTUS used the same template of the document that was previously used when the middle entity, ShareStaff, was involved as an intermediary in the contractual agreement. Penzato explained that what was determinative was the fact that the intermediary's "middle persons" were not involved in the contractual arrangement and that this was a direct relationship between Nightingale and CHRISTUS. If an intermediary had been involved, no direct contract would have existed between Nightingale and CHRISTUS.

Contracts entered into evidence also establish that direct agreements between Nightingale and CHRISTUS existed as follows: one signed in 2006; one executed on December 10, 2009 that expired on November 30, 2010 and was executed December 10, 2009; a hospital contract agreement dated February 22, 2011,

8

scheduled to end June 4, 2011; another hospital contract agreement dated May 27, 2011, extending through September 3, 2011; and, another extension dated August 30, 2011, extending through October 1, 2011, the contract that applied to claimant's injury. The invoice for the work the claimant did bearing invoice 105391 was paid directly by CHRISTUS to Nightingale on December 22, 2011. That spreadsheet shows total payments from CHRISTUS of $100,000.00.

Accordingly, Nightingale contends there was no manifest error in the WCJ's ruling that CHRISTUS did not suffer any prejudice to preclude LIGA's recovery.

*Analysis*

As detailed above, self-insurance is considered "other insurance" pursuant to La.R.S. 22:2062(A)(5)(b). Thus, CHRISTUS is a solidary obligor ultimately responsible for paying the claim per La.R.S. 22:2062(A)(1) and (4). LIGA accepted the claim, and as a result of accepting the claim, placed it within the guidelines of a covered claim pursuant to La.R.S. 22:2055.

First, we address CHRISTUS's argument that amended language of La.R.S. 22:2062 (previously La.R.S. 22:1386) substantively changes the meaning of the statute. After review, we find that the amended language does not abrogate *Cline*, as the newly worded statute contains almost identical language:

Current:

(2) Any amount payable on a covered claim under this Part shall be reduced by the full applicable limits stated in the other insurance policy, or by the amount of the recovery under the other insurance policy as provided herein.

Previous:

(1) . . . Any amount payable on a covered claim under this part shall be reduced by the amount of any recovery under such insurance policy.

We find that the change in language does not change the meaning of the law.

Additionally, the WCJ made no substantive finding that CHRISTUS is a "high net worth insured" as to this case. That term is reserved for an insured whose value is so high it does not qualify for LIGA protection. Rather, we find that CHRISTUS was self-insured, thus an "other insurance" pursuant to La.R.S. 22:2062. Although the WCJ refers to CHRISTUS as a "high net worth insured," in the reasons for ruling, it is not relevant to our analysis, because the judgment, not the reasons issued for it, controls. *See Filmore Parc Apartments II v. White*, 24-475 (La.App. 4 Cir. 2/14/25), 418 So.3d 42.

CHRISTUS further argues that recovery is precluded under La.R.S. 22:2058, which requires notifications to claimants, insureds, and "other interested parties" of insolvency. We disagree. As Nightingale noted, any obligation to provide statutory notification is prescribed by three circumstances/phrases: "as deemed necessary by the commission"; "upon the Commissioner's request"; and "to the extent that records are available to the Association." Again, we find that the record contains no evidence that any of these three requirements/qualifiers have been met.

After review, we agree with the WCJ's finding of fact that the contracts in evidence demonstrate a direct contract existed between Nightingale and CHRISTUS. In fact, around the date of claimant's incident, CHRISTUS directly paid Nightingale for the claimant's work. We agree that the presence of multiple direct contracts indicates there was no intermediary entity between CHRISTUS and Nightingale. Thus, CHRISTUS could not have been prejudiced because in fact no insurance other than CHRISTUS was available to the claimant after CastlePoint's insolvency. Therefore, we find that no prejudice occurred from the lack of notification to CHRISTUS of CastlePoint's insolvency as LIGA is the carrier of last resort and pays sums that should be paid by another entity, reimbursement is due and payable. *See Cline*, 619 So.2d 1256.

10

Therefore, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 2

*Appellant's arguments*

In assignment of error number two, CHRISTUS argues that neither LIGA nor Nightingale put CHRISTUS on notice that the contract between the parties could not be located. Therefore, every contract introduced into evidence and attached to the documents deposition of CHRISTUS contained language that Nightingale would be responsible for paying worker's compensation for employees such as claimant and would agree to indemnify and hold CHRISTUS harmless. Thus, CHRISTUS argues it is entitled to indemnification against Nightingale and LIGA. CHRISTUS further requests penalties and attorney's fees against Nightingale.

CHRISTUS urges this court to find that LIGA, which it claims is responsible for the debts of Nightingale under its duty to provide employee insurance coverage to CHRISTUS, be allowed to proceed against CHRISTUS for amounts it paid or to reimburse CHRISTUS. Alternatively, CHRISTUS argues that Nightingale and LIGA are liable to CHRISTUS for their virile share if this matter is deemed a solidary obligation.

Additionally, CHRISTUS contends it is due reimbursement under the Louisiana Worker's Compensation Act, specifically La.R.S. 23:1031(C), which states:

> As between the special and general employers, they shall have the right to seek contribution from the other for any payments made on behalf of the employee, unless there is a contract between them expressing a different method of sharing the liability.

Thus, CHRISTUS argues that even if this court determines no indemnification agreement exists between Nightingale and CHRISTUS, the statute above allows

CHRISTUS to seek contribution against Nightingale, or LIGA, who stands in the position of Nightingale.

*Appellee's arguments*

Nightingale argues that CHRISTUS seeks to circumvent the provisions of Louisiana law regarding LIGA by making a claim against Nightingale in violation of La.R.S. 22:2055(6)(b)(iii):

> . . . In addition, any person insured under a policy issued by an insolvent insurer shall likewise not be liable for any subrogation claim or any contractual indemnity claim asserted by any reinsurer, insurer, insurance pool, underwriting association, health maintenance organization or plan, hospital plan corporation, professional health service corporation, preferred provider organization or plan, employee retirement fund including but not limited to plans subject to the Employee Retirement Income Security Act of 1974, Medicaid, self-insurer, or any other person with an interest in the claim, other than to the extent the claim exceeds the association's obligation limitations.

Nightingale argues that CHRISTUS failed to establish the existence of a contract establishing defense, indemnity, and hold harmless provisions applicable to this case. Thus, the WCJ's ruling was not manifestly erroneous.

Nightingale also formally answered the appeal requesting this court to uphold the sum reached by the WCJ and further seeking attorney's fees and requesting oral arguments.

*Analysis*

The WCJ determined that there was no defense, indemnity or hold harmless provision (contractual or otherwise) applicable in this case. We review this determination under the manifest error standard, and find that, based on the record, it is not clearly wrong.

In this matter, LIGA steps into the position of the defunct carrier, CastlePoint. This to the extent the "other insurance" provisions exonerate LIGA, those provisions also exonerate Nightingale. To hold otherwise would make our laws pertaining to

LIGA irrelevant and would provide absurd consequences by punishing a business when its insurance carrier went out of business, notwithstanding LIGA's immunity and the existence of "other insurance." Furthermore, La.R.S. 22:2055 is directly on point in that regard and precludes recovery by CHRISTUS as discussed above.

Additionally, the record does not contain any document indicating that Nightingale would be responsible if its compensation carrier went out of business, and none of the contracts in evidence contain this language. The only contracts that included these types of indemnity and hold harmless provisions were the previous contracts between ShareStaff, and Nightingale. Those contracts did not apply here. Moreover, at the time of the incident, ShareStaff had ceased to exist as an entity, and the contracts had expired. Thus, we find neither Nightingale nor LIGA were obligated to reimburse CHRISTUS.

Finally, CHRISTUS asserts that La.R.S. 23:1031 assigns the virile share obligations. That assignment cannot apply where LIGA has stepped into the position of the carrier pursuant to La.R.S. 22:2062 A(1) and (4).

In summary, LIGA accepted the claim, and the legal ramifications of that acceptance are that the claim was confirmed as falling within the guidelines of a covered claim pursuant to La.R.S. 22:2055. That issue has not been challenged or disputed. Therefore, we find that LIGA, the payor of last resort, is entitled to full reimbursement from CHRISTUS, and CHRISTUS is entitled to no reimbursement. This assignment of error lacks merit.

## DECREE

Defendants raised two assignments of error. We find no merit to defendant's assignments of error, and we affirm the WCJ's judgment. Further, the request for attorney fees by all parties is denied.

Costs of these proceedings, including this appeal, are assessed to defendant/appellant, CHRISTUS Health Southwest Louisiana d/b/a CHRISTUS St. Patrick.

**AFFIRMED**.

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 25-730 consolidated with 25-729

TELECA DONACHRICHA

VERSUS

CHRISTUS HEALTH SOUTHWEST, ET AL

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 23-04740 C/W 22-00929
MELISSA A. ST. MARY, WORKERS COMPENSATION JUDGE

**********

**GARY J. ORTEGO**
**JUDGE**

**********

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Clayton Davis, Judges.

**AFFIRMED.**

John C. Turnage
Mayer, Smith & Roberts, L.L.P.
8570 Business Park Dr, Suite 200
Shreveport, LA 71105
(318) 629-7019
COUNSEL FOR DEFENDANT/APPELLANT:
Christus Health Southwest Louisiana

Michelle M. Sorrells
Walters, Thomas, Cullens
12345 Perkins Rd, Building 2
Baton Rouge, LA 70810
(225) 236-3646
COUNSEL FOR PLAINTIFF/APPELLEE:
Teleca Donachricha

Eric J. Waltner
Allen & Gooch
2000 Kaliste Saloom Rd. Suite 400
Lafayette, LA 70508
(337) 291-1400
COUNSEL FOR DEFENDANTS/APPELLEES:
Louisiana Insurance GuarantyAssociation
Nightingale Nurses, LLC

**ORTEGO, Judge.**

For the reasons assigned in *Teleca Donachricha v. Nightingale Nurses, LLC., et al.*, 25-729, (La.App. 3Cir. 06/__/26, __So.3d __, handed down this day, the following Decree is provided in this consolidated matter:

## DECREE

Defendants raised two assignments of error. We find no merit to defendants' assignment of errors, and we affirm the WCJ's judgment. Further, the request for attorney fees by all parties is denied.

Costs of these proceedings, including appeal, are assessed to defendants /appellants, CHRISTUS Health Southwest Louisiana d/b/a CHRISTUS St. Patrick.

**AFFIRMED**.